```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF WASHINGTON

GEORGINE FIANDER,             )
                              ) No. CV-06-3027-CI
         Plaintiff,           )
                              ) ORDER GRANTING PLAINTIFF'S
v.                            ) MOTION FOR SUMMARY JUDGMENT
                              ) AND REMANDING FOR FURTHER
MICHAEL J. ASTRUE, Commissioner ) PROCEEDINGS
of Social Security,¹          )
                              )
         Defendant.           )
                              )
                              )
```

BEFORE THE COURT are Plaintiff's Motion for Summary Judgment (Ct. Rec. 15) and Defendant's Motion for Summary Judgment (Ct. Rec. 26). The court noted the matter for hearing without oral argument on February 2, 2007. (Ct. Rec. 24.) Attorney Thomas Bothwell represents Plaintiff; Special Assistant United States Attorney Richard M. Rodriguez represents the Commissioner of Social Security ("Commissioner"). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7.) After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS**

---

[1] As of February 12, 2007, Michael J. Astrue succeeded acting Commissioner Linda S. McMahon as Commissioner of Social Security. Pursuant to FED. R. CIV. P. 25(d)(1), Commissioner Michael J. Astrue should be substituted as Defendant, and this lawsuit proceeds without further action by the parties. 42 U.S.C. § 405(g).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR FURTHER PROCEEDINGS - 1

Plaintiff's Motion for Summary Judgment and **REMANDS** the matter to the Commissioner for further proceedings. (Ct. Rec. 15.) Defendant's Motion for Summary Judgment is **DENIED.** (Ct. Rec. 26.)

## JURISDICTION

Plaintiff filed applications for Disability Insurance Benefits ("DIB") on July 20, 2001, February 26, 2002, and April 16, 2002; and for Supplemental Security Income on April 23, 2002, alleging an onset date of January 14, 2000. (Tr. 62-64, 65-67, 69-71, 648-650.) The applications were denied initially and on reconsideration. (Tr. 30-31, 143, 187, 651-652, 653-655.) Administrative Law Judge (ALJ) Vernell Dethloff held a hearing on July 22, 2004, and Plaintiff testified. (Tr. 663-682; 666-680.) On December 11, 2004, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 17-27.) The Appeals Council denied a request for review on January 27, 2006. (Tr. 8-10.) Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on April 4, 2006. (Ct. Rec. 4.)

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner, and will only be summarized here.

Plaintiff was 49 years old on the date of the ALJ's decision. (Tr. 18, 62.) She has a GED and two years of college education. (Tr. 18, 81.) Plaintiff has worked as a home health care worker, cashier, video clerk, bartender/cook, dorm monitor/bus driver, and camp counselor. (Tr. 18, 76.)

Plaintiff alleges disability due to neuropathy, swollen feet, lower lumbar pain, vision and left retina problems, diabetes and congestive heart failure since January 14, 2000. (Tr. 18, 75, 126.)

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a Plaintiff is not only unable to do previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination

of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404, Subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past.  If a Plaintiff is able to perform previous work, that Plaintiff is deemed not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered.  If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

   The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work.  The burden then shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform

other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

Plaintiff has the burden of showing that drug and alcohol addiction ("DAA") is not a contributing material factor to disability. *Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001). The Social Security Act bars payment of benefits when drug addiction and/or alcoholism is a contributing factor material to a disability claim. 42 U.S.C. §§ 423(d)(2)(C) and 1382(a)(3)(J); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998). If there is evidence of DAA and the individual succeeds in proving disability, the Commissioner must determine whether the DAA is material to the determination of disability. 20 C.F.R. §§ 404.1535 and 416.935. If an ALJ finds that the claimant is not disabled, then the claimant is not entitled to benefits and there is no need to proceed with the analysis to determine whether alcoholism is a contributing factor material to disability. However, if the ALJ finds that the claimant is disabled and there is medical evidence of drug addiction or alcoholism, then the ALJ must proceed to determine if the claimant would be disabled if he or she stopped using alcohol or drugs. *Bustamante v. Massanari*, 262 F.3d 949 (9th Cir. 2001).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR FURTHER PROCEEDINGS - 5

"The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a

finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ALJ'S FINDINGS**

The ALJ found at the onset that Plaintiff meets the nondisability requirements and is insured for disability benefits through December 4, 2004. (Tr. 18.) The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity during any time at issue. (Tr. 18.) At step two, the ALJ found that the medical evidence established that Plaintiff suffered from the severe impairments of diabetes, neuropathy, and obesity. (Tr. 19.) He found that although there is evidence that Plaintiff has a history of asthma, alcoholism in remission, a bone spur on her right foot, and occasional anxiety, she does not allege that she suffers from these impairments, and the ALJ found that they are not severe. (Tr. 19.) With respect to congestive heart failure, the ALJ found at step two that Plaintiff's heart impairment resolved within a year and no longer constitutes a severe impairment. (Tr. 21.) At step three, that ALJ found that type 2 diabetes, neuropathy, and obesity are severe impairments, but Plaintiff does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments. (Tr. 21.)

After finding Plaintiff's testimony regarding her limitations not fully credible, the ALJ concluded at step four that Plaintiff has the RFC to perform a full range of work at the sedentary exertion level except that she cannot work in an environment with unprotected heights or dangerous machines. (Tr. 23, 25.) The ALJ concluded that Plaintiff is unable to perform her past work. (Tr.

25.) At step five, the ALJ considered Plaintiff's age, education, and work experience, determined that Plaintiff has no transferable skills "and/or transferability of skills is not an issue," and relied on the Grids to determine that Plaintiff is not disabled within the meaning of the Social Security Act. (Tr. 25-26.) Because the ALJ determined at step five that Plaintiff was not disabled, he did not consider whether alcoholism is a contributing factor material to disability.

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law. Specifically, she argues that the ALJ failed to properly weigh the medical evidence and failed to identify the specific jobs she can perform. (Ct. Rec. 16 at 9-18.) The first issue is dispositive. After the ALJ's decision, Plaintiff reapplied for benefits and filed a Disabled Widow's Claim.[2] (Ct. Rec. 16 at 2.)

The Commissioner opposes the Plaintiff's Motion for Summary Judgment and asks that the ALJ's decision be affirmed. (Ct. Rec. 27 at 6.) Consistent with *Bustamante*, after conducting the five step

---

[2] Plaintiff's later application was granted and she was awarded SSI benefits as of March 27, 2006. (Ct. Rec. 16.) The court's decision is based upon the record accompanying her applications for DIB and SSI filed July 20, 2001, February 26, 2002, April 16, 2002, and April 23, 2002, alleging an onset date of January 14, 2000. The court takes notice of, but expresses no opinion on, the merits of subsequent applications. See, *e.g., Ward v. Schweiker,* 686 F.2d 762, 766 at n.4 (9th Cir. 1982) (result of later application noted by the court.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR FURTHER PROCEEDINGS - 8

analysis and finding Plaintiff not disabled, the ALJ did not conduct further DAA analysis.  This is not challenged by either party but will need to be examined after further proceedings.

**DISCUSSION**

**A.   Weighing Medical Evidence**

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908.  The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms.  20 C.F.R. § 416.929.  Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms.  *Bunnell v. Sullivan*, 947, F.2d 341, 345 (9th Cr. 1991).

A treating or examining physician's opinion is given more weight than that of a non-examining physician.  *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004).  If the treating or examining physician's opinions are not contradicted, they can be rejected only with "clear and convincing" reasons.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  If contradicted, the ALJ may reject an opinion if he states specific, legitimate reasons that are supported by substantial evidence.  *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995).  In addition to medical reports in the record, the analysis and opinion of a non-examining medical expert selected by an ALJ may be helpful to the adjudication.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (*citing Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989).

Testimony of a medical expert may serve as substantial evidence when supported by other evidence in the record. *Id.*

Plaintiff contends that the ALJ erred by rejecting the opinions of treating physicians Daniel Hocson, M.D., and Rex Quaempts, M.D., and by improperly crediting the opinion of a non-physician disability adjudicator, Kathleen Foltz. (Ct. Rec. 16 at 9-15.) The Commissioner responds that the ALJ properly weighed the medical evidence and Plaintiff's credibility when he determined that she is capable of sedentary work. (Ct. Rec. 19 at 8-17.)

Treating doctor Daniel Hocson, M.D., examined Plaintiff on January 8, 2001. He assessed a moderate impairment, congestive heart failure ("CHF"), and 3 mild impairments: diabetes, hypertension and anemia. (Tr. 396.) Dr. Hocson noted that "ideally control of CHF should provide sufficient relief for her to return to work." (Tr. 397.) He opined that Plaintiff would be unable to work at least half-time for 16 weeks, but could be released for work on May 1, 2001. (Tr. 397.) There is no indication that Dr. Hocson limited Plaintiff's anticipated return to work in May of 2001 to part-time or half-time work.

When Dr. Hocson saw Plaintiff more than 2 months later, on March 21, 2001, he noted her cardiac function was stable. He assessed visual impairment from retinopathy. (Tr. 411.) Dr. Hocson opined that Plaintiff's inability to work at least half-time would last 24 weeks, and she could be released for work on September 24, 2001. He did not limit Plaintiff's return to work to part-time or half-time. (Tr. 411.) Dr. Hocson expressed uncertainty whether Plaintiff's condition would stabilize or worsen. (Tr. 411.) Dr. Hocson's March opinion is thus somewhat ambiguous because he opined

Plaintiff could be released to work by September 24, 2001, but was uncertain whether her condition would stabilize or worsen.

Plaintiff alleges that the ALJ erred by concluding that Dr. Hocson found her capable of sedentary work. She alleges that the ALJ's error occurred because he interpreted Dr. Hocson's form evaluation as opining that Plaintiff could perform full-time sedentary work, whereas Plaintiff contends that Dr. Hocson opined that she could perform sedentary work at least half-time in a normal work day setting but did not release her to work full time. (Ct. Rec. 16 at 14.) The Commissioner responds that both of Dr. Hocson's 2001 assessments released Plaintiff to work at the sedentary level by specific dates, presumably full time. (Ct. Rec. 27 at 14, citing Tr. 397, 411.) The release dates indicated on the forms contain no half-time or part-time restrictions. Dr. Hocson opined as to the number of weeks Plaintiff would be unable to work full time. Accordingly, it appears that although he remained uncertain about her condition, Dr. Hocson's release dates are those anticipated for Plaintiff's full-time return to work.

Plaintiff alleges that the ALJ also failed to properly credit the opinion of treating physician Rex Quaempts, M.D. (Ct. Rec. 16 at 1-13.) More than three years after Dr. Hocson's assessment, on July 7, 2004, Dr. Quaempts opined that Plaintiff's "stated need for recumbency/need to lay down for an average of about 3 hours during the 8 or 9 consecutive hours during a typical workday shift . . . is reasonable (as opposed to unreasonable or excessive) considering the medical evidence of her impairments." (Tr. 515.)

Dr. Quaempts gave this opinion in response to a questionnaire from Plaintiff's counsel, and added to the form: "Patient

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR FURTHER PROCEEDINGS - 11

unemployable secondary to medical problems." (Tr. 516.)

Dr. Quaempts opined that Plaintiff's diabetes and neuropathy "very significantly" interfered with her ability to stand, walk, handle and carry. He opined that these limitations would last a minimum of 12 months even with treatment. As a result, he felt that Plaintiff was a poor candidate for a job. (Tr. 512-514.) The ALJ pointed out that, despite Plaintiff's alleged congestive heart failure, lower back pain and swollen feet, Dr. Quaempts's examination revealed that Plaintiff's cardiovascular, back and lower extremities were within normal limits on the date of his exam. (Tr. 512.) Dr. Quaempts inconsistently opined that Plaintiff's overall work level is sedentary and she is a poor candidate for a job. (Tr. 513.)

The ALJ found Dr. Quaempts's opinion that Plaintiff was unemployable "suppositional, conclusory, and unsupported by the record." (Tr. 24.) He gave three reasons for rejecting some of Dr. Quaempts's opinions: (1) the relatively short period of treatment (less than 3 months) before he assessed severe limitations; (2) the inconsistencies between Dr. Quaempts's normal exam results and his opinion that Plaintiff is a poor candidate for work, and (3) the inconsistencies between his opinion of her inability to work and his opinion that she can work at the sedentary level. (Tr. 24.)

When he found that Plaintiff's CHF resolved within a year and is no longer severe, the ALJ stated:

> The claimant was admitted to Providence Toppenish Hospital in June of 2000 with congestive heart failure. Exhibit 12F/6. A radiology report dated November 27, 2000, showed improvement in the postanterior chest, as well as a finding that the cardiac silhouette was in the upper limits of normal in size. Exhibit 21F/23. There was "marked improvement with almost complete resolution of

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR FURTHER PROCEEDINGS - 12

> [congestive heart failure] since 11/22/00." On January 10, 2001, Dr. Hocson, the claimant's primary care physician, gave the claimant's congestive heart failure a rating of three on a scale of one to five. 17F/1. On that scale, a three is defined as a "moderate impairment" which poses "[s]ignificant interference with the ability to perform one or more basic work-related activities." On February 20, 2001, the claimant saw Dr. Monick, her treating heart specialist. 18F/3. Dr. Monick noted the claimant's history of congestive heart failure, and stated that it is currently controlled. He examined the claimant and observed no overt signs of congestive heart failure. Furthermore, the claimant denied symptoms of congestive heart failure on April 21, 2001. Exhibit 21F/3. She even testified that she had heart failure "in the past." The claimant's heart impairment resolved within a year and no longer constitutes a severe impairment.

(Tr. 21.)

An impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb. Barnhart*, 433 F.3d 683, 686-687 (9th Cir. 2005)(citing *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988). If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step. S.S.R. No. 85-28 (1985). Step two, then, is "a de minimus screening device [used] to dispose of groundless claims," *Smolen*, 80 F.3d at 1290, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." S.S.R. 85-28. The question on review is whether the ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. *Webb*, 433 F.3d at

687; *see also Yuckert*, 841 F.2d at 306.

In this case, the ALJ found that Plaintiff's CHF resolved within a year and no longer constitutes a severe impairment, despite the opinion of one of Plaintiff's treating physicians that CHF poses significant interference with the ability to perform one or more basic work-related activities. (Tr. 396.) As noted, another treating physician, Dr. Quaempts, felt that Plaintiff was a poor candidate for a job. (Tr. 514.) Although the medical record is not entirely clear, it includes evidence of problems caused by CHF and by CHF in combination with other impairments sufficient to pass the de minimus threshold of step two. *See Smollen*, 80 F.3d at 1290. Though Plaintiff ultimately bears the burden of establishing her disability, the ALJ has an affirmative duty to supplement Plaintiff's medical record, to the extent it was incomplete, before rejecting this impairment at so early a stage in the analysis, particularly in light of the opinions of two treating physicians that Plaintiff suffers severe impairments likely to interfere with employment. "In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Webb*, 433 F.3d at 687, *citing Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam).

The ALJ is correct that Dr. Quaempts's exam on April 26, 2004, revealed Plaintiff's cardiovascular, back, and lower extremities were within normal limits, despite her alleged congestive heart failure, lower back pain, and foot swelling. (Tr. 24, referring to Tr. 512.) However, as noted, Dr. Quaempts also opined that Plaintiff is a poor candidate for a job and needs to lay down for 3 hours during an 8-hour day. (Tr. 513-514.)

The ALJ found that Drs. Hocson and Quaempts assessed an ability to perform sedentary work.  The ALJ failed to expand the record to reconcile this assessment with the more severe limitations also indicated by the physicians: Dr. Hocson opined that Plaintiff's CHF significantly interfered with her ability to perform work-related activities (Tr. 396), and Dr. Quaempts opined that Plaintiff is a poor candidate for a job. (Tr. 514.)

The ALJ's finding at step two that CHF is no longer a severe impairment is not clearly established by medical evidence.  Accordingly, the case must be remanded for additional proceedings to correct the legal error.

Plaintiff moved to supplement the record with evidence relating to claims filed after the ALJ's decision in this case. (Ct. Rec. 16 at 2.)  The Commissioner correctly points out that this evidence is irrelevant to the time frame on which the ALJ's decision is based: the date of onset (January 14, 2000) through the date of the current decision (December 11, 2004).  (Ct. Rec. 27 at 6-7.)  The court takes judicial notice of Plaintiff's later application and award but Plaintiff's motion to supplement must be denied.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision at step two that Plaintiff's congestive heart failure resolved within a year and is no longer a severe impairment is not clearly established by the medical evidence.  Because the ALJ committed this error at step two, the case is remanded for further proceedings to determine whether CHF is a severe impairment, alone or in combination with Plaintiff's other impairments, and, if appropriate, to conduct the *Bustamante* analysis

with respect to Plaintiff's use of alcohol.

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 15)** is **GRANTED.** The matter is remanded to the Commissioner of Social Security for further proceedings consistent with the this decision and sentence four of 42 U.S.C. §§ 405(g).

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 26)** is **DENIED.**

The District Court Executive is directed to file this Order, provide copies to counsel for Plaintiff and Defendant, enter judgment in favor of Plaintiff, and **CLOSE** this file.

DATED March 21, 2007.

                S/ CYNTHIA IMBROGNO
            UNITED STATES MAGISTRATE JUDGE